IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 3:25-CV- |
| $803,150.00 in U.S. Currency, | |
| Defendant *in Rem*. | |

## **VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $803,150.00 in U.S. Currency ("Defendant Property"):

## **NATURE OF THE ACTION**

1.     This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).  The United States seeks the forfeiture of the Defendant Property under 21 U.S.C. § 881(a)(6) because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846.  The Defendant Property also is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because it is property that constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and *in rem* jurisdiction is proper under 28 U.S.C. § 1355(b).

3.    Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b) because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4.    The Plaintiff is the United States of America.

5.    The Defendant Property is $803,150.00 in U.S. Currency. The Defendant Property was seized from Maxwell Schlesinger at the JSX Airlines terminal at the Dallas Love Field Airport, Texas, on January 27, 2025.  On January 29, 2025, the Defendant Property was transferred to the custody of Homeland Security Investigations/Immigration and Customs Enforcement ("HSI/ICE") and was deposited into an HSI/ICE suspense account with Loomis in Dallas, Texas.

6.    Maxwell Schlesinger, by and through his attorney Arnold Spencer, filed a claim to the Defendant Property in HSI/ICE's administrative forfeiture proceeding against the Defendant Property on March 11, 2025.

## FACTS

7.    The primary responsibility of HSI is to identify, investigate, and prevent criminal activity.  HSI conducts federal criminal investigations into the illegal movement

of people, goods, money, contraband, weapons, and sensitive technology into, out of, and throughout the United States.  HSI's investigations are wide ranging to include drug and weapons smuggling, cyber and financial crime, illegal technology exports, and intellectual property crime.

8.      Investigators, officers, and special agents with HSI are specially trained and learn by experience how to identify, investigate, and prevent criminal activity.

9.      On January 27, 2025, HSI officers were conducting narcotics trafficking investigations at the JSX Airlines terminal at Dallas Love Field in the Northern District of Texas.

10.     The HSI officers deployed a narcotics detection canine—trained to alert to the presence of cocaine, heroin, marijuana, methamphetamine, and their derivatives—to conduct free air sniffs on luggage associated with an outbound flight to John Wayne Airport in Santa Ana, Orange County, California just outside Los Angeles.

11.     The free air sniffs conducted by the narcotics detection canine were in the area of the luggage vehicle tug.  A photograph of the free air sniff is depicted here:



12.     The narcotics detection canine signaled a positive alert for drug odor on two tan hard-sided suitcases.

13.     The baggage claim tags on the suitcases indicated that the suitcases belonged to Maxwell Schlesinger ("Schlesinger") who was traveling to John Wayne Airport in California.

14.     The HSI officers searched the two tan suitcases because the narcotics detection canine positively alerted to the presence of drug odor emitting from the tan suitcases and because the suitcases were on a luggage vehicle tug imminently being transported to and placed on an aircraft to then be transported to another state.

15.    The HSI officers could smell the odor of marijuana emitting from the suitcases.

16.    The search of the two suitcases revealed that only bulk U.S. currency, with no other contents, was inside the two suitcases.

17.    The cash was vacuumed-sealed and rubber banded together. A photograph of the vacuumed-sealed currency is depicted here:



18.    The cash appeared to be worn and circulated and was in various denominations, rubber banded together into numerous smaller bundles. A photograph of the bundles of currency is depicted here:

Page **5** of **13**



19.    Based on their training and experience, the HSI officers believed the currency was consistent with bulk cash smuggling and transportation of drug proceeds.

20.    The HSI officers located Schlesinger, the owner of the suitcases, inside the terminal of JSX Airlines.

21.    The officers were wearing plain clothes and had no visible weapons, and they conducted a consensual encounter with Schlesinger.

22.    An officer displayed his law enforcement badge and identified himself as a law enforcement officer, and he asked if he could speak with Schlesinger.

23.    Schlesinger refused to identify himself, did not want to speak with the officers, and asked for a lawyer to be present.

24.    Schlesinger had little to no reaction when told his suitcases and the currency were being detained for further investigation.

25.    Schlesinger had a carry-on duffle bag sitting on the ground beside him.

26.    The HSI officers again utilized a narcotics detection canine to conduct a free air sniff on the duffle bag.

27.    The narcotics detection canine positively alerted on the duffle bag.

28.    The duffle bag was detained pending the application for and execution of a search warrant.

29.    Schlesinger walked away from the officers and stepped outside the terminal to make a phone call to an attorney.

30.    Schlesinger then returned inside the terminal and presented his California identification card to the officers, which positively identified Schlesinger.

31.    Schlesinger's California identification card was used to complete a custody receipt for seized property and evidence.

32.    A search warrant was obtained for Schlesinger's duffle bag, so the officers searched the bag.

33.    Inside the duffle bag was some clothing, personal items, and approximately $44,000.00 in U.S. currency that was rubber banded together in various denominations.

34.    The inside of the duffle bag smelled of marijuana.

35.    The U.S. currency found inside the duffle bag was seized.

36.    The duffle bag and its remaining contents were returned to Schlesinger.

37.     Schlesinger was not arrested.

38.     Additional investigation of Schlesinger revealed Schlesinger's LinkedIn profile had a hyperlink to Pro Farms (https://profarms.farm) and a banner photograph of cultivated marijuana.

39.     Pro Farms is a company located in Santa Barbara, California and is a business that grows cannabis and advertises selling cannabis products.

40.     Pro Farms advertises that its product potency is consistently 18% to 30% and that its growing method allows it to provide the densest and highest quality buds.

41.     "Buds" is a common term used by marijuana users and distributors to describe the flowered portion of the marijuana plant, which contains the highest concentration of THC.

42.     A records check revealed that Schlesinger has a criminal history that includes narcotics and shoplifting.

43.     The U.S. currency seized from Schlesinger was taken to Loomis in Dallas for an official count and deposit.

44.     The money seized from Schlesinger totaled $803,150.00.

45.     In the undersigned law enforcement officer's experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

**FIRST CAUSE OF ACTION**
**21 U.S.C. § 881(a)(6)**
**(forfeiture of property related to drug trafficking)**

46.     The United States of America reasserts all allegations previously made.

Page **8** of **13**

47.     Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 *et seq.* are subject to forfeiture.

48.     Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  An attempt or conspiracy to do the same also is prohibited by 21 U.S.C. § 846.

49.     As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846.  The Defendant Property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION
### 18 U.S.C. § 981(a)(1)(C)
### (forfeiture related to violation of the Travel Act)

50.     The United States of America reasserts all allegations previously made.

51.     Under 18 U.S.C. § 981(a)(1)(C), any property that constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States of America.

52.    Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a "specified unlawful activity."

53.    18 U.S.C. § 1952(a) prohibits, among other things, any individual who uses "any facility in interstate or foreign commerce, with intent to–"

> (1) distribute the proceeds of any unlawful activity; or
>
> . . .
>
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity

from thereafter performing or attempting to perform an act described in subparagraph (1) or (3) above.

54.    18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

55.    As set forth above, the Defendant Property is property that constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952.  The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## **REQUEST FOR RELIEF**

WHEREFORE, the United States of America respectfully asserts that the Defendant Property is forfeitable to the United States of America under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States of America further requests:

A.    That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property;

B.    That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C.    That a Judgment of Forfeiture be decreed against the Defendant Property;

D.    That, upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E.    That the United States of America receives its costs of court and all further relief to which it is entitled.

DATED this 9th day of July 2025.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

   */s/ John Penn*
JOHN PENN
Assistant United States Attorney
Indiana Bar No. 28722-29

Page **11** of **13**

1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: john.penn@usdoj.gov
ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Task Force Officer with Homeland Security Investigations ("HSI"). As a Task Force Officer with HSI, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Verified Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed this 9th day of July 2025.

_____
Task Force Officer Zachary Helm
Homeland Security Investigations